1              IN THE UNITED STATES DISTRICT COURT

2             FOR THE MIDDLE DISTRICT OF GEORGIA

3                      ATHENS DIVISION

4                   _____

5       THE UNITED STATES OF AMERICA    )
                                        ) Case No. 3:14-CR-00040
6         vs.                           ) Athens, Georgia
                                        )
7       DAVID BENTON, DEFENDANT.        )
        _____

8

9                        SENTENCING

10

11           BEFORE THE HONORABLE C. ASHLEY ROYAL
             UNITED STATES DISTRICT JUDGE, PRESIDING
12                     June 25, 2015

13

14   APPEARANCES:

15   FOR THE GOVERNMENT:        PETER D. LEARY, AUSA
                                UNITED STATES ATTORNEY'S OFFICE
16                              POST OFFICE BOX 1702
                                MACON, GA  31202-1702

17

18   FOR THE DEFENDANT:         CATHERINE M. WILLIAMS
                                FEDERAL DEFENDERS OF THE
19                              MIDDLE DISTRICT OF GEORGIA
                                440 MLK BLVD, STE 400
20                              MACON, GA  31201

21

22

23   _____

24                   *DARLENE D. FULLER, USCR*
                      POST OFFICE BOX 1873
25                    MACON, GA  31202-1873
                        (478) 752-3497

1    Athens, Georgia

2    Thursday, June 25, 2015

3    1:42 p.m.

4                      P R O C E E D I N G S

5         THE COURT:  Now we are on U.S. versus David Benton.

6         MS. WILLIAMS:  Yes, Your Honor, would you like us here

7    or up front?

8         THE COURT:  Come forward.  All right.  This involves

9    Count I, conspiracy to possess with the intent to distribute

10   methamphetamine, and he's being held accountable for

11   987.03 grams of actual methamphetamine.

12        You have some objections.  I can't tell if they've

13   been resolved or not.  One of them relates to the counting of a

14   conviction or -- and then one of them has to deal with the

15   matter of his directing Crawford involving some drugs.  So tell

16   me, what now is the status of the --

17        MS. WILLIAMS:  None of them have been resolved, Your

18   Honor.

19        THE COURT:  None of them have been resolved.  Okay.

20   All right.

21        MS. WILLIAMS:  There is the issue concerning

22   leader/organizer for the 2-level enhancement.  There is an

23   issue regarding the criminal history, whether or not that

24   conviction should be counted.  And then there is an issue of a

25   downward departure or variance.

1          THE COURT:  Right.  Okay, all right.  Well, I was a

2   little bit unclear about the status of it.  There are character

3   letters in there.  I did read those character letters.

4          He does have a history of drug abuse.  I think that he

5   needs a residential drug treatment program.  I'm going to

6   recommend that for him.

7          Sir, have you been over this presentence report with

8   your attorney?

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  And you understand what's stated in there?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Do you have any questions about it?

13         THE DEFENDANT:  No, sir.

14         THE COURT:  Do you have any questions about anything

15   in the presentence report?

16         THE DEFENDANT:  No, sir.

17         THE COURT:  Okay.  All right.  Well, let's deal with

18   this matter first.

19         MS. WILLIAMS:  Your Honor, he keeps looking at me like

20   he wants to say something.  And if he wants to say something, I

21   want him to say it.

22         THE COURT:  All right.

23         THE DEFENDANT:  I've got a question.  I mean, as

24   far -- is that right?  I have questions like she wants to

25   argue.  Yes, sir, I do.

1        THE COURT:  Well, I'm going to let her argue.

2        THE DEFENDANT:  Yes, sir.

3        THE COURT:  I am just asking you if you have any

4   questions about the presentence report.

5        THE DEFENDANT:  The only thing was about the

6   guidelines is the only question I have.

7        THE COURT:  We're going to deal with that one right

8   now, okay?

9        THE DEFENDANT:  Yes, sir.

10       THE COURT:  Okay.  So, all right.  The first matter

11  deals with this -- I think it was a 2-level upward departure,

12  and that had to do with the fact that the phone calls were

13  being monitored at the jail over there, and apparently a phone

14  call was intercepted or -- I don't -- I don't understand

15  exactly how they did it, but there was some kind of a

16  conversation between Benton and Mary Ann Crawford, and he

17  directed her to go get some drugs, which I understand that she

18  did.  And he has gotten a 2-level increase because he -- I

19  guess was a supervisor/manager, so forth, so on.

20       You cite one case in your brief and what you expected

21  the government to cite, but the government didn't really cite

22  that case.  The government cited the case of *U.S.* versus

23  *Jiminez*, 224 F.3rd 1243.  And that dealt with what seemed to me

24  to be a fairly similar situation.

25       Your argument that somehow he had management of the

1    assets and not her, and hence this 2-level increase doesn't --

2    quite frankly, just doesn't make any sense to me.  I mean, he

3    called her, he told her what to do, he told her how to do it,

4    he told her where to go to do it, and she did it.  And I even

5    thought that that was admitted in part of the plea agreement,

6    right?  Wasn't that in the plea agreement?

7            MR. LEARY:  Yes, Your Honor.  The plea agreement

8    stipulated that the defendant conspired with MC to retrieve the

9    methamphetamine from a hidden location, and that Defendant then

10   told her to sell it on his behalf.  And the evidence in this

11   case is very clear in terms of recorded phone calls, in terms

12   of text messages.

13           THE COURT:  Well, she came right in and cooperated,

14   the way I understand it.

15           MR. LEARY:  No, Your Honor, and I can proffer some

16   additional information on that.  I do have a witness if the

17   Court wants to hear a witness.  I don't know if that's

18   necessary.

19           THE COURT:  I don't think it's necessary.

20           MR. LEARY:  Your Honor, the police were monitoring

21   phone calls between Defendant and MC, and in those phone calls

22   it was clear that Defendant was directing MC to dispose of

23   certain illegal drugs.  The police wanted to recover those

24   drugs so they used an undercover officer to text with MC in an

25   attempt to obtain those drugs.

1          MC would not give the drugs, but wanted to go talk to

2     Defendant in jail before doing anything.  And when MC arrived

3     at the jail to talk to Defendant, that's when MC was

4     intercepted by the police; read her *Miranda* rights; informed

5     that the person she thought that MC had been texting with was,

6     in fact, law enforcement; at which time she gave a confession

7     that she had obtained the drugs and then led law enforcement to

8     them, where the 1.3 kilograms of methamphetamine was recovered.

9          THE COURT:  That was what I was referring to.  I mean,

10    she did -- once she got caught, she did cooperate.

11         MR. LEARY:  Yes, Your Honor.

12         THE COURT:  I mean, I just don't see how you make out

13    this objection.  I don't --

14         MS. WILLIAMS:  Well, there's a couple different

15    things, Your Honor.

16         THE COURT:  Okay.  Go ahead.

17         MS. WILLIAMS:  The first thing, you know, this was a

18    situation in which we had tried to negotiate how we thought the

19    sentence would come out in this case.  Neither the government

20    nor I anticipated this enhancement.  When the probation

21    department went ahead and assessed that 2-level increase, the

22    government decided that it supported that, okay.  That's not

23    something that we ever anticipated prior to the entry of the

24    plea.

25         The other issue is, you know, even in the government's

1  own statement, as we stand here, is that he directed her to

2  sell the methamphetamine.  She never did any of that.  And

3  never disposed of it.

4          THE COURT:  She didn't go get the drugs?

5          MS. WILLIAMS:  She never sold it.  And what the phone

6  calls refer to is selling it.  So, if the government's position

7  is that, you know, he is directing her as part of his business

8  to distribute methamphetamine, that simply didn't happen.

9          THE COURT:  Well, I mean, she can't sell it unless she

10 gets it.  So.

11         MS. WILLIAMS:  If you listen to the phone calls --

12         THE COURT:  We don't know what would have happened if

13 she had --

14         MS. WILLIAMS:  If you listen to the phone calls, it's

15 clear that she is the one that's calling the shots as to

16 whether or not she's going to -- how she's going to distribute.

17 She tells him not to -- not to rush her, she'll take care of it

18 in her own time, that she'll figure it out.

19         I mean, this isn't a situation in which he is

20 directing her to do specific things and she is acting as his

21 agent.  That -- the phone calls simply do not bear that out.

22         THE COURT:  Well, what's your position on this, that

23 this 2-level increase was not contemplated?

24         MR. LEARY:  Your Honor, it simply was not discussed.

25 It was not a matter of the plea negotiation at all.  It is not

1  something that the government had thought about.  I don't know

2  if it's something the defense had thought about or not, but we

3  did not discuss it at all.

4        As the Court is well aware, there are things that come

5  out in PSRs that the parties do not contemplate.  And in this

6  case, the law--the *Jiminez* case, the *Mendoza* case cited by the

7  government--are very clear that when a defendant recruited an

8  individual or asserted influence or control over an individual,

9  that's sufficient to justify the enhancement.

10        I am respectfully disagreeing with counsel on a couple

11  of these phone calls -- at least two phone calls.  There's an

12  October 7th call and an October 12th call where the defendant

13  said that he was going to write to MC and tell MC what to do

14  with the stuff.  I mean, there was clearly influence.

15        And the fact that MC didn't sell the drugs because MC

16  had to go talk to Defendant at the jail before doing so is an

17  additional indication that Defendant was asserting influence

18  and control over MC's actions.  Somebody he recruited, somebody

19  he directed to dig up the methamphetamine, somebody who he

20  directed to sell the methamphetamine, somebody who wouldn't act

21  without his direction.

22        Even though the government didn't contemplate it

23  originally, never discussed it with Defendant.  And there were

24  obviously significant concessions Defendant did receive in this

25  plea agreement; for example, going from a 10-to-life charge,

1    which, if the government had filed an 851 enhancement, would

2    have become a 20-to-life charge.  He was allowed to plead to a

3    max 20 charge.  So the 20 years that would have been his floor

4    suddenly became his ceiling, which is very important here where

5    his range, in fact, goes well beyond that ceiling, is capped at

6    that ceiling, so.

7              THE COURT:  You want to say anything further on this?

8    I mean, I think about the facts as they are makes it clear that

9    this was an appropriate 2-level increase.  I think it fits into

10   the *Jiminez* case.  I think that -- I am going to overrule you

11   on that one.

12             Now, the next matter you had was related to Paragraphs

13   54 and 55.  And the 3 criminal history points for his

14   conviction in Case Number 13-ER-156-H.  This was in Elbert

15   County.  Apparently he got five years' imprisonment for the

16   offense of fleeing or attempting to elude a police officer and

17   possession of marijuana -- I'm sorry, methamphetamine with the

18   intent to distribute.  And your argument -- well, go ahead.

19             MS. WILLIAMS:  Your Honor, essentially the argument is

20   that that conviction in Paragraph 54 and 55 is essentially part

21   of the same conspiracy that we're talking about here, because

22   there's just a 5-day difference between --

23             THE COURT:  Just a 5-day difference?

24             MS. WILLIAMS:  Yes.  -- between him being sentenced

25   and this -- this offense.  So, it's our position that those

1    three criminal history points should not be included in -- not

2    be counted against him.

3         MR. LEARY:  Your Honor, the traffic stop was in July,

4    2013.  It was wholly unrelated to the conspiracy which, as the

5    government set forth in the indictment, started months later.

6         THE COURT:  Did you say 5 days or 5 months?

7         MR. LEARY:  The sentence, Your Honor, was on

8    October 1st, but the incident was on July 7th.  And that was a

9    traffic stop where Mr. Benton, again, as was convicted, was

10   fleeing and eluding and did possess methamphetamine with intent

11   to distribute.  The fact that he possessed methamphetamine with

12   intent to distribute previously is simply separate and apart.

13   The government's position here is he was a drug dealer then and

14   he was a drug dealer later.  Those are not -- that's not the

15   same conduct.  It is separated by months in time, by distance.

16   Clearly those points should be counted.

17        MS. WILLIAMS:  Your Honor, I simply disagree.

18        THE COURT:  Well, it is what it is.  I mean, there's a

19   5-month difference here.  I don't think -- between when the

20   sentencing occurred.

21        MS. WILLIAMS:  Your Honor, the government just said he

22   was a drug dealer then, he's a drug dealer now.  This is an

23   ongoing conspiracy.  It's our position that it is all of the

24   same course of conduct.

25        THE COURT:  It looks like he was a drug dealer before

1    he came to my court in this case.  So anyway, I'm going to

2    overrule your objection on that.  I think the government's

3    position is well taken.

4           All right.  Now, next Paragraphs 98 and 99, factors

5    that may warrant departure and facts that may warrant sentence

6    outside of the advisory guideline range.

7           MS. WILLIAMS:  Yes, Your Honor.  There's a couple

8    different issues that came up as part of that.  As the Court

9    can see from the objections that I filed in my conversations

10   with my client -- of course, I always give my client an

11   estimated guideline range of what I believe the sentence will

12   be.  Clearly in this case I calculated incorrectly.  What I had

13   explained to him, what I thought his guideline range would be

14   as a career offender is 151 to 188 months.  And part of my

15   reasoning for asking for the downward departure is I'm asking

16   the Court to take a look at my client's age.

17          THE COURT:  All right.  Well, I considered that.  What

18   is he, forty-nine?

19          MS. WILLIAMS:  Yes.

20          THE COURT:  Forty-nine, right.

21          MS. WILLIAMS:  Yes.  Your Honor, and to take into

22   consideration the fact that when he was out, he was one of the

23   primary caregivers for his mother.

24          THE COURT:  I noticed that.

25          MS. WILLIAMS:  She is in the courtroom if you'd like

1    to hear from her.  There's also a lot of --

2            THE COURT:  It looked like he had a job working with

3    stone carving or something like that.

4            MS. WILLIAMS:  Absolutely, Your Honor.  That's what he

5    did for the majority of his life.

6            THE COURT:  Sounded like he was very good at it.

7            MS. WILLIAMS:  He was.  He was, and has a lot of

8    community support through his business.

9            THE COURT:  All right.  I read all the letters.

10           MS. WILLIAMS:  And it wasn't until he became injured

11   and started using prescription pills that led him into the

12   methamphetamine addiction.  So Your Honor, I'm asking the Court

13   to take all of those things into consideration in a downward --

14   and vary downward in this case.  In considering his age and

15   those 3553a factors, we think it would be unreasonable for the

16   Court to sentence him to an exorbitant amount of time which

17   also will end up being a life sentence for Mr. Benton.

18           MR. LEARY:  Your Honor, Mr. Benton earned his offense

19   level in this case through the exceptionally large amount of

20   methamphetamine.  That's 1.3 kilograms of a mixture, and it was

21   very high quality.  It was almost 987 grams of actual

22   methamphetamine.  That is a lot of methamphetamine.  That

23   drives his offense level quite high.

24           He also was a leader/organizer, as the Court has

25   already found.  So there is no question that the offense level

1    here is high because of Mr. Benton's actions.

2            Similarly, his criminal history, Your Honor, is also

3    exceptionally high.  He has a lengthy criminal history:  2003

4    carrying a concealed weapon, 2005 --

5            THE COURT:  Let me just stop you a minute.  His

6    criminal history is of great concern to the Court.  I mean,

7    we've got weapons here.  In 2003, carrying a concealed weapon.

8    2005, terroristic threats and acts.  And then '07 there's a

9    marijuana possession.  '08, another firearm charge, possession

10   of a firearm by a convicted felon.  Then in '13 -- 2013,

11   another possession of firearm.  He had tons of guns, lots of

12   different kinds of guns.  And I mean, he has a very serious --

13   and there's a fleeing or attempting to elude, which we've

14   already talked about.

15           MR. LEARY:  Between those, Your Honor, there was a

16   criminal solicitation where he provided -- he requested

17   somebody to provide false alibis so he could leave the state

18   and commit an assault.

19           THE COURT:  All right.  He has a very, very serious

20   criminal record here, and he -- I'm --

21           THE DEFENDANT:  Sir, can I --

22           THE COURT:  I don't keep up with all the amounts of

23   drugs that come through my court.  If this isn't the highest

24   amount of meth, it's close.  You may have had another client

25   who had a higher amount than this, but this is -- this is ten

```
1    times or more what we normally see in my court.  So this is all

2    very, very troubling to me.  When you combine the amount of the

3    drugs, and then take that with his very serious criminal

4    history, Category 6.  Very, very troubling.

5              MS. WILLIAMS:  I think he would like to address the

6    Court, too.

7              THE COURT:  Go ahead, sir.

8              THE DEFENDANT:  Rabbit hunting was the gun charges.  I

9    love to rabbit hunt.  That's all I was doing, was rabbit

10   hunting.  Both times.  Rabbit hunting.  I love rabbits.  It's

11   what I was doing, sir.

12             THE COURT:  All right.

13             THE DEFENDANT:  And the terroristic threat -- sir, I

14   pleaded guilty to these things because -- what this started, I

15   whupped my young'un.  I corrected my young'un.  Really -- I'm

16   really -- I'm really not even guilty, but I whupped my young'un

17   and they said they was going to get me for assault with a

18   deadly weapon, 40 years.  I pled guilty to this stuff in the

19   state court just to get on out and get on through.

20             That's what a lawyer advised me, sir.  I ain't guilty

21   of it.  But rabbit hunting was the gun charges.  Every one of

22   them, sir.  For rabbit hunting.  I love to rabbit hunt.  That's

23   all I was doing.

24             THE COURT:  I cut you off.  Was there anything else

25   you wanted to say?
```

1          MR. LEARY:  Your Honor, just that the range in this

2     case is accurately calculated.  It's 235 to 293 months.  It's

3     capped because of the plea agreement at 240.  So that leaves

4     him with a 235 to 240 month range that Mr. Benton has earned.

5     And that the government would ask the Court to sentence him

6     with that.

7          THE COURT:  Well, it's also very troubling that after

8     he was locked up, he was still trying to continue the drug

9     trafficking.  That's -- that's very problematic.

10          THE DEFENDANT:  May I say one more thing?

11          THE COURT:  Yes, sir.

12          THE DEFENDANT:  When we come up on the boxes over

13     there, they was not took off my property, but we didn't know

14     there was drugs in the boxes.

15          THE COURT:  Okay.  You wanted to say something else?

16          MS. WILLIAMS:  Your Honor, the only other thing that

17     the government and I had discussed is that the government would

18     not object to the running of this sentence and the state

19     sentence concurrent.

20          THE COURT:  I've got "run concurrent" written down

21     here, so I am going to run it concurrent.

22          MS. WILLIAMS:  Thank you, Your Honor.

23          Your Honor, in the issue with -- concerning the

24     concurrent -- again, this is a situation like we had in our

25     first case -- since he is on a writ from the Department of

1    Corrections, again, it's a situation where he would not get any

2    credit for the time that he's been in federal custody.

3    Likewise, if the Court was going to run it concurrent to the

4    state charge, he's actually been sentenced on that state charge

5    I believe for 24 months now.  So what we'd ask the Court to do

6    is to --

7                THE COURT:  For how many months?

8                MS. WILLIAMS:  From the --

9                THE COURT:  Did you say 23?

10               MS. WILLIAMS:  24.  -- the original -- the date of

11   conviction.

12               THE COURT:  Anything to say about that?

13               MR. LEARY:  Your Honor, the government believes the

14   235 to 240 months is accurate.  I would ask the Court to stay

15   within that range.  As counsel correctly represents, the

16   government takes no position on whether that should be

17   consecutive or concurrent to other sentences--there's actually

18   multiple sentences that he was there on--but would ask for the

19   range of 235 to 240 months.  That be the sentence in this case,

20   given that that is what the drug amount reflects, that is what

21   the history reflects.

22               THE COURT:  Well, I'm going to give him 235 months and

23   run it concurrent.

24               MS. WILLIAMS:  You will not give him any credit for

25   the time that he's done in federal custody?

1          THE COURT:  I still don't understand why the Bureau of

2     Prisons wouldn't give him credit for that time.

3          PROBATION:  Because the Bureau of Prisons doesn't

4     allow joint credit.  And so since he has been in the -- I mean,

5     it's -- that's how they interpret the statute.  And so since he

6     has been in federal custody -- I mean, in state custody since

7     October of 2013, and that 20-year sentence has -- or that

8     15-year sentence has been running, he's been getting time on

9     the State for that 15-year sentence since he's been there.

10    Now, when the Court imposes sentence today, his federal time

11    will start today.  But it will continue to run along with the

12    State time.

13          THE COURT:  And that's even if I run it concurrently?

14          PROBATION:  Correct.  It starts the day you impose it.

15          MS. WILLIAMS:  Correct.  So in order for him to get

16    credit for that, the Court has to take that amount of time off

17    the sentence that the Court is imposing today; otherwise, he

18    will not get that credit.

19          THE COURT:  So that would be 211 months?

20          MR. LEARY:  Just so I'm clear, Your Honor, is the

21    defense asking that the time that Mr. Benton has been in

22    federal custody, which would be November of 2014, which is when

23    he was writted through the State, be credited, which is 8

24    months?  Or is the defense asking for from the original arrest?

25    I am not sure what --

1          MS. WILLIAMS:  The date of the conviction on the State

2    offense.

3          MR. LEARY:  So that would be October 1st of 2013.  If

4    I am right.

5          THE COURT:  I'll write these dates down again.

6    October 1st of what year?

7          MS. WILLIAMS:  2013.

8          THE COURT:  And when was he brought into --

9          MR. LEARY:  November 4th, Your Honor.

10         THE COURT:  November the 4th or November the 6th?

11         PROBATION:  November the 4th, Your Honor, he came in

12   on a writ.  He had an IE on the 6th and was detained.

13         MS. WILLIAMS:  That is correct.

14         MR. LEARY:  That's in Paragraph 7, Your Honor.

15         THE COURT:  So one the difference is 8 months and one

16   the difference is 24 months?  Is that correct?

17         MS. WILLIAMS:  Yes.

18         THE COURT:  Okay.  And what was it about this that got

19   him picked up 8 months ago and brought into federal custody?

20         MR. LEARY:  The indictment was not filed until August

21   of 2014, Your Honor.  That the case was brought to the

22   government.

23         THE COURT:  Okay.

24         MR. LEARY:  I think that was a 3-month delay from when

25   the -- from the indictment to writ.  There was a period of time

1    there that it takes to get somebody over.

2              THE COURT:  And was he being held -- October 1st of

3    2013, he was being held on the State charges.  What happened to

4    those?

5              MR. LEARY:  Your Honor, to be clear, on October 1st of

6    2013, Mr. Benton was sentenced on several cases.  There was

7    an --

8              THE COURT:  Now, this goes back to the objection that

9    you made earlier?

10             MR. LEARY:  No, I think just more clarification on

11   what he was sentenced on.  There was a lot -- the summer of

12   2013 was a very busy activity for Mr. Benton.  All that was

13   wrapped up on one sentencing date.  There was an April, 2013,

14   charge which was the 40-plus firearms and theft and receiving.

15   There was also a March, 2013, aggravated assault charge, which

16   Mr. Benton referred to earlier as correcting his son, which was

17   where the court records reflected firing a weapon at a car and

18   striking with -- his son with a pistol.  There was also a June,

19   2013, conviction of leaving -- that was the criminal

20   solicitation.  And then there was the July, 2013, fleeing and

21   eluding/methamphetamine with intent to distribute.

22             THE COURT:  So, in other words, he hadn't been in jail

23   on this charge -- just this charge?

24             MR. LEARY:  Not just this charge.

25             THE COURT:  He was in jail on other charges, too?

1          MS. WILLIAMS:  That's correct.

2          THE COURT:  I see.  Okay.

3          MR. LEARY:  He was in, and then he was out, and then

4     he was in, and then there was -- and on October 1st everything

5     was wrapped up in one sentencing.

6          THE COURT:  And he was picked up and has been in

7     federal custody basically now for 8 months?

8          MR. LEARY:  Yes, Your Honor.

9          THE COURT:  Is that right?

10          MS. WILLIAMS:  That's correct.

11          THE COURT:  Okay.  But he won't get credit for that 8

12     months unless I give it to him; is that right?

13          MS. WILLIAMS:  That's right.

14          PROBATION:  Correct.

15          THE COURT:  Okay.  All right.

16          MS. WILLIAMS:  What I had additionally asked, though,

17     is for the Court to go back to October.

18          THE COURT:  No, I am not doing that in light of what I

19     understand about this.  I will give him the 8 months' credit

20     though, which would bring it down, because I was going to give

21     him 235, and I will give him 227.  And that's I guess another

22     downward variance.  Is that clear?

23          MR. LEARY:  Yes, Your Honor, that's clear.

24          THE COURT:  Is that clear?

25          MS. WILLIAMS:  Yes, Your Honor.

1              THE COURT:  Anybody want to say anything else?

2              MS. WILLIAMS:  Do you want to say anything?

3              THE DEFENDANT:  No.

4              MS. WILLIAMS:  No.

5              THE COURT:  Well, I am going to vary downward because

6      I want him to get the credit.  This is a long time, but this is

7      a very, very serious crime.  And he has a very serious criminal

8      record.  All right.

9              Having considered the presentence report which was

10     prepared following your guilty plea, the Court accepts your

11     plea agreement in this case and adjudicates you guilty of the

12     one count superseding information.  The Court has determined

13     that the advisory sentencing range is 235 to 240 months

14     considering an Offense Level of 33 and a Criminal History

15     Category of 6.

16             In imposing the sentence in this case, the Court has

17     considered the advisory sentencing range and the sentencing

18     factors found at 18 U.S.C. Section 3553a.

19             The Court has also made an individualized assessment

20     based on the facts presented.  The Court commits you to the

21     Bureau of Prisons for a period of 227 months.  This is a

22     downward departure, and I've given the reasons why I'm doing

23     that.  The Court notes you're serving an undischarged term of

24     imprisonment imposed in the Superior Court of Elbert County,

25     Georgia, on October 1, 2013; Case Numbers 13-ER-140-H and

1    13-ER-156-H.  The Court orders that your federal term of

2    imprisonment be served concurrently to the State terms of

3    imprisonment.  The Court also imposes a mandatory assessment in

4    the amount of $100.

5           Any criminal monetary penalty ordered by the Court

6    shall be due and payable in full immediately.  Present and

7    future assets are subject to enforcement and may be included in

8    the Treasury's offset program, allowing qualified federal

9    benefits to be applied to the balance of criminal monetary

10   penalties.

11          The Court waives the imposition of a fine and any

12   alternative sanctions based on your financial condition.

13          I do recommend that you have the benefit of the

14   residential drug treatment program based on your history of

15   drug abuse.

16          Your prison term is to be followed by a period of

17   supervised release of three years.  You shall report to the

18   U.S. Probation Office in the district in which you're released

19   within 72 hours of release from the custody of the Bureau of

20   Prisons to begin service of the term of supervised release.

21          Supervised release includes the standard conditions

22   and the following mandatory conditions:  You shall not possess

23   a firearm, ammunition, destructive device, or any other

24   dangerous weapons.  You shall cooperate in the collection of

25   DNA as directed by the probation officer.  You shall submit to

1    a drug test within 15 days of release and at least two periodic

2    drug tests thereafter for the use of a controlled substance.

3         The Court orders that the following special condition

4    also apply.  You shall participate in a program of drug and

5    alcohol testing and treatment.  The U.S. Probation Office shall

6    administratively supervise your participation in the program by

7    approving the program, administering the testing, supervising

8    the treatment.  You shall contribute to the cost of such

9    treatment not to exceed an amount determined reasonable by the

10   court-approved U.S. Probation Office's Sliding Scale for

11   Services, and shall cooperate in securing any applicable third

12   party payment such as insurance and Medicaid.

13        The Court notes you have knowingly and voluntarily

14   waived your statutory right to appeal, with certain exceptions

15   in the plea agreement.  Should you decide to appeal your

16   sentence based on one of the exceptions, you must file a notice

17   of appeal or request the Clerk of the Court to file a notice of

18   appeal on your behalf within 14 days of judgment being entered.

19   If you are unable to afford the cost of any appeal, you have

20   the right to ask the Court to waive the normal costs and/or

21   appoint counsel to represent you.

22        Now that the findings of the Court have been made and

23   sentence imposed, are there any objections to the sentence as

24   to the finding of facts and conclusions of law other than those

25   already stated for the record?

1          MS. WILLIAMS:  Nothing other than those already

2     stated, Your Honor.

3          MR. LEARY:  The same for the government, Your Honor.

4          THE COURT:  Anything further?

5          MS. WILLIAMS:  No, Your Honor.

6          MR. LEARY:  No, Your Honor.

7          THE COURT:  Thank you all very much.

8          BAILIFF:  All rise.

9      (Proceedings were concluded at 2:11 p.m.)

10                      END OF RECORD

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5           I, Darlene D Fuller, Federal Official Realtime Court

6    Reporter, in and for the United States District Court for the

7    Middle District of Georgia, do hereby certify that pursuant to

8    Section 753, Title 28, United States Code, that the foregoing

9    is a true and correct transcript of the stenographically

10   reported proceedings held in the above-entitled matter and that

11   the transcript page format is in conformance with the

12   regulations of the Judicial Conference of the United States

13

14                     Dated this 18th day of August, 2015

15

16

                                    *Darlene D. Fuller*

17   _____
                                    Darlene D Fuller, CSR No. 5803
18                                   RPR, CRR, RMR
                                    Federal Official Court Reporter
19

20

21

22

23

24

25